FILED
SUPERIOR COURT
OF GUAM

2024 JUL -8 PM 1:39

CLERK OF COURT

BY:_____ SM _____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| TERRITORY OF GUAM EX REL JOHN RYAN,<br><br>Plaintiff-Relator,[2]<br><br>vs.<br><br>TITAN IMPORTS, INC.; JOHN DOES 1-4,<br><br>Defendants. | Civil Case No. CV1278-19<br><br>**DECISION AND ORDER**<br>(Amended Motion for Award) |

This *qui tam*[1] action came before the Honorable Alberto E. Tolentino on December 7, 2023, upon Plaintiff-Relator[2] John Ryan's ("Ryan") Amended Motion for Award (Nov. 9, 2023). At the hearing, Attorney Braddock J. Huesman appeared on behalf of Ryan; Attorney Jehan'Ad G. Martinez appeared on behalf of Defendant Titan Imports, Inc. ("Titan Imports"), and Attorney Sandra E.C. Miller appeared on behalf of nonparty Guam Department of Revenue and Taxation ("DRT"). Having duly considered the arguments and applicable law, the Court **GRANTS** Ryan's Motion.

## BACKGROUND

Ryan brought this case under Guam's False Claims and Whistleblower Act, 5 GCA ch. 37 ("False Claims Act"). The False Claims Act allows private individuals to prosecute civil actions in

---

[1] "The term '*qui tam*' comes from the Latin expression '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means, 'who pursues this action on our Lord the King's behalf as well as his own.'" *People ex rel. Allstate Ins. Co. v. Weitzman*, 132 Cal. Rptr. 2d 165, 167 (Ct. App. 2003).

[2] In a *qui tam* action, a relator is "essentially a self-appointed private attorney general." *People ex rel. Strathmann v. Acacia Research Corp.*, 148 Cal. Rptr. 3d 361, 370 (Ct. App. 2012).

the name of the Government of Guam. 5 GCA § 37202(a). The Government of Guam has the right to intervene in False Claims Act cases, but it declined to do so in this case. *See* 5 GCA § 37202(b)(2); Notification of Declination to Intervene (Jan. 6, 2020).

Titan Imports is a Guam corporation whose business includes the importation and wholesale of alcoholic beverages. Alcoholic beverages sold in Guam are subject to an excise tax. 11 GCA § 26302. Ryan has alleged that Titan Imports knowingly failed to comply with its tax obligations, violating several provisions of the False Claims Act in the process. *See generally* V. Compl. (Nov. 5, 2019). Ryan seeks to recover these unpaid taxes on behalf of Guam, and collect a portion of the recovery for himself.

In 2022, before trial in this case had begun, Titan Imports entered Chapter 11 bankruptcy proceedings in the District Court of Guam ("Bankruptcy Case").[3] On March 31, 2022, Titan Imports filed a Notice of Automatic Stay, asserting that 11 U.S.C. § 362 required this case to be stayed until the Bankruptcy Case was resolved. The Court agreed, and the case was stayed indefinitely thereafter. *See* Min. Entry (July 1, 2022).

On August 2, 2023, Ryan filed a Motion for Award, accompanied by a Declaration of Braddock J. Huesman. These filings informed the Court that the automatic stay in the bankruptcy case no longer precludes this Court from proceeding. The judge in the bankruptcy case issued a Confirmation Order,[4] which provides, in relevant part:

> The automatic stay, to the extent still applicable to the Debtor's Bankruptcy Case, pursuant to 362(a) of the Bankruptcy Code shall be, and is hereby, modified pursuant to Section 362(d) of the Bankruptcy Code solely to permit John Ryan, Ex Rel the Territory of Guam ("Mr. Ryan") to petition the Superior Court of Guam for an order and judgment in the Qui Tam Action (Civ. Case No. CV1278-19) granting him a "Whistleblower Award" from the Debtor's distributions under the Plan on

---

[3] *In re Titan Imports, Inc.*, Case No. 22-0007 (Bankr. D. Guam), before the Honorable Daniel P. Collins.
[4] The full title is "Order Confirming Small Business Debtor's First Amended Plan of Reorganization: Exhibits 1-5." *See* Am. Decl. Braddock J. Huesman, Ex. 3 (Nov. 9, 2023).

account of the ABC Taxes, under Guam's False Claims Act. 5 GCA § 37101 *et seq.*

. . . .

Am. Decl. Braddock J. Huesman, Ex. 3 at 3 (Nov. 9, 2023) (Confirmation Order). The Confirmation Order states that Titan Imports owes a tax liability to Guam in the amount of $1,463,987.09 (hereafter, "Total Tax Amount"), although the amount still due is lessened by "the $600,000 paid by the Debtor directly to DRT in March of 2022." *Id.*

Ryan's Motion for Award asks the Court to enter judgment in this case for the Total Tax Amount, and to award Ryan 30% of this amount ($439,192.12) under 5 GCA § 37103(b)(7). Mot. Award at 4. It also asks the Court to award Ryan 30% of the annual interest accruing from Titan Imports' payments into escrow. *Id.* at 3, 4. The Motion for Award also highlights Titan Imports' previous payment of $600,000.00 to DRT. Ryan asserts that he is entitled to 30% of this money ($180,000.00), but that DRT has so far made "no provision" of it to Ryan. *Id.* at 3. The Motion for Award asks the Court to order that Ryan be allowed to claim a disproportionately large (*i.e.*, more than 30%) share of Titan Imports' future escrow payments until he is made whole on the $180,000.00 he is already owed, and thereafter resume a 30%-70% split of future payments. Neither Titan nor the Government of Guam[5] filed a response to the Motion.

On November 9, 2023, Ryan filed an Amended Motion for Award, accompanied by an Amended Declaration of Braddock J. Huesman. The Amended Motion "seeks substantially similar relief to the Original Motion with exception of timing of the Award payment." Am. Mot. Award at 2 (Nov. 9, 2023). While the initial Motion sought for Ryan to temporarily receive a disproportionately large share of future payments to recoup the $180,000.00 he is owed, the Amended Motion asks the Court to order DRT to pay him $180,000.00 immediately. *Id.* at 4. Ryan

---

[5] At the hearing on December 7, 2023, DRT explained that it had not filed anything because the Government of Guam had previously declined to intervene, which means it is not a party to this matter and therefore was prohibited to file. Tr. at 17-18 (Mot. Hr'g, Dec. 7, 2023).

grounds his new request in the text of the statute, as well as the legal positions DRT has taken in another case before the District Court of Guam. Again, no responses were filed.

The Court heard the Amended Motion on December 7, 2023. At the hearing, Titan Imports took no position on the Amended Motion, explaining that the payment issue is solely between Ryan and DRT. *See* Transcript ("Tr.") at 6 (Mot. Hr'g, Dec. 7, 2023). DRT argued that under the False Claims Act, the Government of Guam is the "correct payor" of Ryan's award, so he should seek payment from the Government of Guam, not from DRT. *Id.* at 12. Ryan objected that DRT's arguments were not submitted in writing before the hearing and that neither DRT nor the Government of Guam are parties to this action. *Id.* at 14. Ryan also argued that DRT's position about the "correct payor" is contrary to the plain language of 5 GCA § 37103(b)(7). *Id.* at 15-16. At the conclusion of the hearing, the Court took the matter under advisement.

## DISCUSSION

Ryan is entitled to a share of the Total Tax Amount recovery from Titan Imports. The remaining questions are how much he should recover and from whom. With respect to "how much," Ryan argues he is statutorily entitled to an award of 30%, while DRT asks the Court to award a lesser amount. With respect to "from whom," it appears undisputed that upon *future* payments into escrow by Titan Imports, Ryan's award should draw from those funds. The dispute today is over who should pay Ryan's share of the $600,000.00 already collected by DRT. Ryan argues that since DRT collected the $600,000.00, it should also be the entity to pay him his share of that money. DRT argues that the False Claims Act does not authorize it to make payments directly; DRT instead asserts Ryan must collect his share of the money from the Government of Guam, through the Department of Administration.

The parties ground their arguments about payor power in two different provisions of the False Claims Act. Ryan relies on 5 GCA § 37103 ("Whistleblower Awards to Individuals Who Report

Underpayment of Taxes Levied Under the Laws of Guam"), while DRT relies on 5 GCA § 37204 ("Award to Qui Tam Plaintiff"). The Court must therefore examine both statutes to determine which one controls here.

### 1. The Two Statutes

The statutes differ in two important ways. First, 5 GCA § 37103, Ryan's preferred statute, provides that when the Government of Guam does not intervene in an action under that statute, "the Tax Enforcement Division shall award not less than thirty percent (30%) of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action." 5 GCA § 37103(b)(7) (emphasis added). Title 5 GCA § 37204, DRT's preferred statute, provides that when the Government of Guam does not intervene in a *qui tam* action, a successful relator is entitled to "an amount which the court decides is reasonable for collecting the civil penalty and damages," which "shall be not less than twenty-five percent (25%) and not more than thirty percent (30%) of the proceeds . . . ." 5 GCA § 37204(b)(1) (emphasis added). In short, Ryan's preferred statute provides for an award to a successful relator of *at least* 30% of the recovery, while DRT's preferred statute provides for an award of *at most* 30%.

Second, 5 GCA § 37103 suggests that such awards can be paid directly by DRT, while 5 GCA § 37204 is silent on the matter. Title 5 GCA § 37103(a)(2) provides that the Director of DRT "is authorized to pay . . . such sums as he deems necessary for . . . detecting and bringing to trial and punishment persons guilty of violating the tax laws enacted in Guam or conniving at the same." In other words, this statute appears to authorize DRT itself to make award payments. Title 5 GCA § 37204, by contrast, provides that in a *qui tam* action, "the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages, and that this amount "shall be paid out of such proceeds" of the action. 5 GCA §

37204(b)(1). While this statute clearly contemplates payments to successful relators, it does not specify who makes this payment. DRT argues that this silence compels a finding that the payor must be the Government of Guam.

### 2. Title 5 GCA § 37103 Controls This Action

To determine which statute applies here, the Court applies traditional canons of statutory construction. "It is a cardinal rule of statutory construction that courts must look first to the language of the statute itself. Absent clear legislative intent to the contrary, the plain meaning prevails." *Sumitomo Constr., Co. v. Gov't of Guam*, 2001 Guam 23 ¶ 17. Additionally, "[a]cts *in pari materia*, or which deal with the same subject matter, are to be construed together." *Aguon v. Gutierrez*, 2002 Guam 14 ¶ 13; *see also Dir. of Dep't of Pub. Health and Soc. Servs. v. Cruz*, 1987 WL 109396 * 1-2 (D. Guam App. Div. 1987 (explaining *in pari materia* rule). And "when two *in pari materia* provisions conflict with each other, the more specific provision trumps the general." *Topasna v. Gov't of Guam*, 2021 Guam 23 ¶ 17. Both statutes here are components of the same overarching legislative enactment, the False Claims Act, so they must be read *in pari materia*.

Title 5 GCA § 37204, DRT's preferred statute, applies by its plain terms to all "action[s] brought by a person under [5 GCA] § 37202." Title 5 GCA § 37202 in turn provides that individuals, acting as relators, can bring "civil action[s] for a violation of §§ 37102 and 37103[.]" These latter two statutory provisions are the only components of Chapter 37, Article 1 ("False Claims and Whistleblowing") that create *qui tam* causes of action.[6] Therefore, all *qui tam* actions brought under the False Claims Act fall within the scope of 5 GCA § 37204. Because the statute applies to all such actions, it is a *general* statute for purposes of the False Claims Act.

---

[6] The remaining provisions of Chapter 37, Article 1 provide definitions (5 GCA § 37101), exemptions from disclosure (5 GCA § 37104), and a general severability clause (5 GCA § 37105).

5 GCA § 37103, by contrast, applies to two particular actions: "detecting underpayments of tax levied under the laws enacted in Guam," or "detecting and bringing to trial and punishment persons guilty of violating the tax laws enacted in Guam or conniving at the same, in cases where such expenses are not otherwise provided for by law." 5 GCA § 37103(a)(1)(2). In such actions, 5 GCA § 37103 provides unique procedures, including the higher minimum award (at least 30%) under 5 GCA § 37103(b)(7). Because these unique procedures apply only to specific tax actions under 5 GCA § 37103, this is a *specific* statute for purposes of the False Claims Act.

In this circumstance, 5 GCA § 37103 controls this action, by application of the "general-specific" canon of construction:

> It is an old and familiar rule that, where there is, in the same statute, a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former, the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment.

*Topasna v. Gov't of Guam*, 2021 Guam 23 ¶ 17 (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 646 (2012)). In short, when an act contains two provisions that are both applicable—one of which applies generally, and the other of which applies specifically—the specific statute controls.

Here, both 5 GCA § 37204 and 5 GCA § 37103 apply. The former applies because, as explained above, all actions under 5 GCA § 37103 fall within the ambit of 5 GCA § 37204. The latter applies because this is an action where Ryan has "detect[ed] underpayments of taxes levied under the laws enacted in Guam" and "br[ought] to trial and punishment persons guilty of violating the tax laws." 5 GCA § 37103(a)(2). Ryan has detected Titan Imports' underpayment of taxes, and although Ryan has not brought Titan Imports to trial in this case, his actions have clearly brought Titan Imports to punishment. As the Judge in the Bankruptcy Case noted, "Ryan conducted

exhaustive (and presumably expensive) discovery against [Titan Imports]. Ryan's dogged pursuit of the ABC Taxes eventually drove [Titan Imports] to file its [bankruptcy petition] on March 25, 2022." Decl. Braddock J. Huesman, Ex. 1 at 3 (Bankruptcy Court Order, Aug. 23, 2022). Ryan's pursuit of this case directly led to the Bankruptcy Court's finding that Titan Imports owes the Government of Guam over $1.4 million dollars in unpaid taxes. The Court therefore finds that Ryan's action is within 5 GCA § 37103, which means it is also within 5 GCA § 37204.

Because both 5 GCA § 37204 and 5 GCA § 37103 apply, "the particular enactment must be operative, and the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment." *Topasna*, 2021 Guam 23 ¶ 17. Title 5 GCA § 37103 is the "particular enactment" here, so it is the operative statute. Any conflict between 5 GCA § 37103 and 5 GCA § 37204 must be resolved in favor of the former.

### 3. Application of 5 GCA § 37103

Because 5 GCA § 37103 governs this case, the Court holds that Ryan is entitled to receive an award commensurate with that statute: "not less than thirty percent (30%) of the collected proceeds (including penalties, interest, additions to tax, and additional amounts) resulting from the action (including any related actions) or from any settlement in response to such action." 5 GCA § 37103(b)(7). The Court denies DRT's request to award a lower amount; the plain language of the statute requires an award of "not less than thirty percent," so that it what the Court shall order. The Judgment in this case shall therefore award Ryan 30% of the Total Tax Amount, as well as 30% of the annual interest accruing based on Titan Imports' escrow payments.

Furthermore, because 5 GCA § 37103 governs this case, the special procedures of that statute take precedence over any conflicting provisions of 5 GCA § 37204. Title 5 GCA § 37103 provides that Director of DRT is "authorized to pay" awards to "from the proceeds of amounts collected," and that "any amount so collected shall be available for such payments." 5 GCA § 37103(b)(7). Here, it

is undisputed that DRT collected $600,000.00 from Titan Imports in 2022. DRT is statutorily "authorized to pay" an award from that amount, and the amount itself is "available for such payment." The Court will therefore order DRT to pay 30% of this amount, or $180,000.00, to Ryan within 30 days of the entry of judgment. Thereafter, Ryan and DRT shall be entitled to 30% and 70%, respectively, of Titan Imports' future payments into escrow and the interest accruing thereon.

## CONCLUSION

Based on the above analysis, the Court **GRANTS** Ryan's Amended Motion for Award in entirety. Ryan shall submit to the Court a proposed Judgment which reflects the rulings herein, as well as any other requests made in the Amended Motion but not addressed in this Decision and Order.

**SO ORDERED** this ___JUL 0 8 2024___ .

_____
HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam

Page **9** of **9**